## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLIFFORD JONES,<br><br>     Plaintiff,<br><br>v.<br><br>CITY OF NEW YORK; NYPD Detectives MICHAEL HOLLAND, ROBERT PRIDGEON, and BERNARD McCROSSAN in their individual capacity; NYPD Sergeant KENNY, in his individual capacity, and NYPD Officer RONALD RESUA, in his individual capacity,<br><br>     Defendants. | **Case No. 18-cv-834**<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff CLIFFORD JONES, by his attorneys the law firms of Neufeld Scheck & Brustin, LLP, hereby alleges as follows.

### INTRODUCTION

1.      Before he was exonerated by DNA testing, Clifford Jones spent nearly three decades in prison and six years under parole supervision for a brutal murder, rape, and attempted robbery of two victims he did not commit.

2.      No physical evidence ever linked Jones to the crimes, and the only evidence against him was the false testimony of a single unreliable witness—the rape victim, an avowed heroin addict who was high on drugs when she wrongly identified Jones as the perpetrator. In fact, even at the time of trial, the physical evidence proved that Jones was not the true perpetrator.

3.      Jones's conviction was not an accident but rather the result of Defendants' serious investigative misconduct.

1

4.     Defendants buried exculpatory physical evidence—proof that hairs found on the true perpetrator's hat were not macroscopically or microscopically consistent with Jones's hair—that would have proven Jones's innocence to the jury.

5.     During the crimes, the perpetrator wore a blue baseball cap that police found at the scene and the rape victim identified. Police recovered numerous hairs, including many from the hatband.

6.     Contemporary DNA testing has shown definitively that Jones could not have been the source of the hairs. But even in 1981, during the original investigation, Defendants determined through macroscopic and microscopic comparison that the hairs had not come from Jones, and, therefore, he was not the blue-capped perpetrator of the crimes.

7.     Instead of ending their prosecution of Jones based on this physical evidence proving he was not the perpetrator, Defendants ensured that the evidence would never see a courtroom. Defendants falsely represented in written and oral reports that the hair samples were less than one centimeter and thus not suitable for macroscopic or microscopic comparison to Jones's hair. In reality, the majority of the hairs were equal to or longer than one centimeter—the longest was five centimeters—and the police *did* compare them to Jones's hair.

8.     The prosecution and Jones's defense counsel never learned the truth—that physical evidence from the crime scene had definitively exculpated Jones.

9.     Defendants also obtained the only trial evidence against Jones—the false identification by the drug-addicted rape victim—through coercive or suggestive means. Defendants improperly coached the victim to identify Jones.

10.     Jones tried to clear his name for 35 years and steadfastly maintained his innocence. He appeared before the parole board seven times, each time truthfully denying any

2

participation in or knowledge of the rape and murder. In 2010, despite Jones's refusal to take responsibility for crimes he did not commit, the board granted him parole. He spent the next six years under parole supervision as a registered sex offender.

11.     During his nearly three-decade long incarceration, many members of Jones's close-knit family passed away, including his brother, grandmother, uncle, aunt, great-aunts, and a sister-in-law. Jones was unable to console his family or join them in mourning because he was incarcerated. He suffered the humiliation of attending his brother's funeral in handcuffs and shackles.

12.     Even after his release, Jones continued to suffer deprivations. He could not leave the state to visit his family or look for work. As a registered sex offender, he had to abide by a curfew and endured ongoing social stigma.

13.     Despite these obstacles, Jones made the most of his freedom by going back to school after his release. He earned an associate's degree from Bronx Community College and a bachelor's degree from John Jay College of Criminal Justice. He is currently applying to graduate programs in criminal justice studies. He also cares for his 86-year-old mother, who lives close to him in the Bronx.

14.     In November 2016, Jones's tireless efforts to prove his innocence finally succeeded. Based on the exculpatory DNA evidence, the prosecution joined a motion to vacate Jones's conviction and moved to dismiss the indictment. The trial court granted the motion, and Jones's name was cleared.

## JURISDICTION AND VENUE

15.     This action is brought under 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

16.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

17.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) in that this is the District in which the claims arose, in which Jones currently resides, and in which Defendants conduct their business.

19.     Plaintiff has complied with the requirements of New York City General Municipal Law § 50-I. Jones made and served a notice of claim on all municipal defendants, within the time required by New York General Municipal Law § 50-e. More than thirty days have elapsed since the service of those notices, and no offer of settlement has been made.

20.      Jones submitted to a hearing pursuant to New York General Municipal Law § 50-h.

## JURY DEMAND

21.     Plaintiff requests a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

22.     Plaintiff **CLIFFORD JONES** is a resident of Bronx County in the State of New York, and at all times relevant to this complaint, was a resident of Bronx County in the State of

4

New York. Jones did not murder Ramon Hernaiz or rape and attempt to rob Leona Robinson, but, on April 15, 1981, Jones was wrongfully convicted of those crimes. More than 35 years later, his conviction was vacated and the indictment dismissed after DNA evidence proved his innocence.

23.     Defendant **CITY OF NEW YORK** was and is a municipality that is a political subdivision of the State of New York, was the employer of the individual defendants, and is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the New York City Police Department ("NYPD").

24.     Defendant Detective **MICHAEL HOLLAND** was at all times relevant to this Complaint a duly appointed and acting detective of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is sued in his individual capacity.

25.     Defendant Detective **ROBERT PRIDGEON** was at all times relevant to this Complaint a duly appointed and acting detective of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is sued in his individual capacity.

26.     Defendant Detective **BERNARD McCROSSAN** was at all times relevant to this Complaint a duly appointed and acting detective of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances,

regulations, policies, customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is sued in his individual capacity.

27.     Defendant Sergeant **KENNY** was at all times relevant to this Complaint a duly appointed and acting sergeant of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is sued in his individual capacity.

28.     Defendant Officer **RONALD RESUA** was at all times relevant to this Complaint a duly appointed and acting detective of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is sued in his individual capacity.

## **<u>BACKGROUND</u>**

29.     On June 2, 1980, an unknown perpetrator raped Leona Robinson on the fourth floor of an apartment building at 53 W. 104th Street. Leaving the building, the perpetrator encountered Ramon Hernaiz in the stairwell, and they struggled. The perpetrator fatally stabbed Hernaiz and fled. During the struggle, a blue baseball hat fell off the killer's head. Police recovered the hat next to Hernaiz's body and drenched in his blood.

30.    Jones did not rape Robinson or murder Hernaiz and has no personal knowledge of these horrible crimes. Jones was not on 104th Street at the time of the crimes, and had never met Robinson or Hernaiz.

31.    In 1980, Robinson had a $50 daily heroin habit and had been convicted more than nine times for prostitution and twice for larceny. Immediately after the crime, she looked at hundreds of photographs without making an identification. After initially cooperating with police, Robinson disappeared. She missed several scheduled appointments with investigators, and, on July 15, 1980, the NYPD closed her rape case because of her refusal to cooperate.

**Defendants obtain a false identification of Jones through coercion or suggestion.**

32.    On September 24, 1980, four months after the crimes, Robinson was brought to the 24th precinct after she was arrested. While high on heroin, she gave investigators a new account of the incident. Whereas she had initially claimed that the perpetrator had forced her into the apartment building at knifepoint, she now claimed that he solicited her for prostitution on the street and that they went together to the apartment building to consummate the transaction. According to her new account, the perpetrator raped Robinson after she told him that she no longer wanted to have sex.

33.    At that meeting, Defendant Detective Michael Holland and other Defendants showed Robinson approximately 58 photographs of suspects, and she falsely identified Jones as the perpetrator based on Defendants' improper suggestion.

34.    Jones, then 26, had never been arrested for a violent offense before. He lived with and provided emotional support for his mother and 17-year-old brother. A high-school graduate with several college credits under his belt, he worked part-time for a kids' summer camp while

taking classes in computer repair. His only prior conviction was in 1977 for misdemeanor drug possession.

35.     Jones did not match the descriptions of the perpetrator Robinson gave shortly after the attack. She initially described the perpetrator as "stocky," but at 6'2" and 168 pounds, Jones was indisputably tall and thin. She described the perpetrator as having corn-rows or braids, but Jones's hair was not braided. She also described the perpetrator as having a noticeable gap in his teeth and a chipped front tooth; Jones had neither. Finally, Robinson initially described the perpetrator as "dark-skinned," but she admitted at trial that Jones is not what she would consider dark-skinned.

36.     Even though Robinson claimed to have had a face-to-face interaction with the perpetrator in broad daylight, she incorrectly identified Jones, who looked nothing like him. Her false identification was caused by Defendant Holland's suggestion or coercion.

37.     A month later, after hearing that police were looking for him, Jones voluntarily went to the precinct to clear his name. Robinson, who was once again high on heroin, had been arrested for prostitution and was brought to the precinct to view Jones in a lineup. Before showing her the lineup, Defendants Holland, Sergeant Kenny, Detective McCrossan, and/or other Defendants told Robinson that her suspected rapist was in custody. In the precinct hallway, before the identification procedure began, Defendant Holland, Sergeant Kenny, and/or other Defendants showed Jones to Robinson and improperly suggested that he was the perpetrator. Under those suggestive circumstances, she falsely identified Jones as the perpetrator.

38.     Defendants Holland, Kenny, and McCrossan knew that it was improper suggestion to show a suspect to a witness before conducting a line-up. Defendants knew that an identification obtained through such suggestion was unreliable. Nevertheless, Defendants did not

document the encounter in the hallway or report their misconduct to the prosecution or to Jones's defense counsel.

39.     Defendants Holland, Kenny, McCrossan, and other Defendants did not disclose to the prosecution or to Jones or his defense counsel that Robinson's identification had been obtained through suggestive or coercive procedures. Defendants Holland, Kenny, McCrossan, and other Defendants did not disclose that they identified Jones for Robinson before the line-up and told her that he was the perpetrator. Instead, they misrepresented in oral reports to prosecutors that Robinson had identified Jones through a lawful and proper line-up procedure.

**Defendants suppress exculpatory physical evidence.**

40.     At trial, Robinson's testimony was the only evidence connecting Jones to the crimes. No physical evidence suggested that he had committed the rape, handled the murder weapon, or was even present at the scene. This lack of inculpatory evidence was notable given the wealth of physical evidence recovered by the police, including a rape kit, blood scrapings, Robinson's pantyhose, a hypodermic needle, a bloody knife (the murder weapon), and the perpetrator's blue hat, which bore many human hairs. The police were unable to connect any of that evidence to Jones because he is innocent.

41.     In fact, hair evidence taken from the perpetrator's blue hat proved Jones's innocence.

42.     At the crime scene, police recovered a blue hat that had been left by the true perpetrator. Robinson confirmed early in the investigation that the perpetrator had worn the hat during the crimes. Police recovered numerous hairs from the hat—many came from under the hat band.

43.     Following Jones's arrest, police took samples of his head and body hairs for comparison with the hairs found in the true perpetrator's hat.

44.     Defendant Ronald Resua mounted the hairs recovered from the crime scene on a microscope slide and compared them to Jones's hairs. The results of the macroscopic and microscopic comparison exculpated Jones—the hair from the crime scene was not Jones's hair.

45.     Years later, in 2010, 2011, and 2015, DNA testing of the evidence hairs recovered from the crime scene established definitively that the hairs came from a single individual—and it could not have been Jones. This later conclusion validated Resua's original testing results.

46.     Rather than end the wrongful prosecution of Jones based on this exculpatory physical evidence, Defendants affirmatively suppressed it from the prosecution and the defense by making false statements in written and oral reports.

47.     In a written report, Defendant Resua falsely represented: "The aforementioned hair fragments are unsuitable for comparison purposes due to their size (less than 1 cm) and dense pigmentation."

48.     In fact, the majority of the hairs were equal to or greater than one centimeter, and the longest was five centimeters.

49.     Additionally, pigmentation is only one of seventeen characteristics used in macroscopic and microscopic hair comparison, and, so, the remaining characteristics could still be compared. Finally, if the hairs all had dense pigmentation but Mr. Jones's did not, then he is easily excluded as the source of the hairs from the hat.

50.     In fact, Resua *did* compare the evidence hairs to Jones's hair, and results exculpated Jones.

51.     Resua misrepresented the length of the hairs in order to suppress the exculpatory results of the hair comparison.

52.     Defendant Holland, who had forwarded the crime scene hairs to Resua, knew that Resua's report was false. Defendant Holland had vouchered the hat and knew that many of the hairs were longer than one centimeter. As the lead detective of the investigation, Defendant Holland knew that Resua had compared the hairs to Jones's and learned that the results exculpated him.

53.     Defendants Resua and Holland did not disclose the exculpatory hair comparison to the prosecution or to Jones or his defense counsel and affirmatively misrepresented in oral and written reports to the prosecution that the comparison had not been done. Disclosing the exculpatory results of the macroscopic and microscopic comparison would have doomed their already shaky prosecution against Jones.

**The jury convicts Jones based on Robinson's identification testimony and without the benefit of the exculpatory hair evidence.**

54.     At trial, the case against Jones rested entirely on Robinson's false identification testimony. No physical or circumstantial evidence implicated Jones in the crime.

55.     Jones pursued a defense of mistaken identity, and his counsel cross-examined Robinson about the inconsistencies in her descriptions of the perpetrator, her chronic heroin use, and her changing narrative about the assault.

56.     The prosecution's case was so weak that the prosecutor took the unorthodox step of interrupting the trial to drum up a second identification witness. A witness who had seen the perpetrator fleeing the apartment building viewed Jones in a lineup. Defendants Holland and Kenny attempted to use suggestion and other improper tactics to induce the witness to identify

Jones, but, despite this pressure, she denied that Jones was the man she had seen and never testified.

57.     Despite the profound weaknesses in the People's case, the jury convicted Jones of murder in the second degree, rape in the first degree, and attempted robbery in the first and second degrees. Because Defendants Resua and Holland had falsely represented that the perpetrator's hair had not been compared to Jones's hair, the jury never heard that the hair comparison exculpated Jones. On July 6, 1981, he was sentenced to an indeterminate prison term of 18 years to life for the murder count.

58.     Jones appealed his conviction, and it was affirmed without opinion by the Appellate Division.

59.     Between 1998 and 2010, Jones appeared before the New York State parole board seven separate times, and he consistently and steadfastly maintained his innocence. In April 2010, despite Jones's refusal to admit responsibility for crimes he did not commit, the parole board found him eligible for parole. He was released from incarceration on June 28, 2010, but remained under the supervision of the State of New York.

60.     Upon his release on parole, Jones was required to register annually as a sex offender. His name, photograph, address, and personal information were published in a public directory. His terms of supervision prevented him from leaving the State of New York.

**The Exoneration Proceedings**

61.     In 2008, after decades of maintaining his innocence and seeking legal assistance, Jones finally obtained counsel and moved under C.P.L. § 440.30(1-a) for DNA testing of the remaining physical evidence in his case.

62.     After a search of its records, the prosecution determined that most of the physical evidence had been destroyed—including the rape kit, knife, blood scrapings, pantyhose, hypodermic needle, and blue hat. Only the true perpetrator's hairs remained. They were still mounted on the microscope slides where Resua had analyzed them.

63.     Jones and the People agreed to have the hairs tested by Mitotyping Technologies, an independent and accredited laboratory.

64.     Mitotyping initially performed a mitochondrial DNA test on three of the hairs from the slides labeled "Under Hat Band," and compared the results to Jones's DNA. Dr. Terry Melton, Mitotyping's president and a nationally recognized expert in mitochondrial DNA testing, concluded that all three hairs came from one man, and he could not have been Jones.

65.     In 2010, the OCME tested the scraping from Hernaiz's fingernail clippings and found a mixture of DNA from at least two people, including Hernaiz himself. Jones was excluded as a contributor to the mixture.

66.     On April 14, 2010, Jones moved under C.P.L. § 440.10(1)(g) to vacate his conviction based on the newly discovered DNA evidence. The People opposed. Although Jones initially lost this motion, the Court of Appeals eventually remanded for an evidentiary hearing.

67.     Following the remand, Mitotyping tested the remaining hairs from the perpetrator's hat, and determined that Jones could be excluded as the contributor of all the hairs.

Each of the nine newly tested hairs came from the same man as the three originally tested hairs—and he could not have been Jones.

68.     The prosecution consented to vacate Jones's convictions based on the more comprehensive DNA results, and, on October 25, 2016, 36 years to the day after Jones's wrongful arrest, Supreme Court, New York County, vacated Jones's conviction.

69.     Based on a review by the New York County District Attorney's Office's Conviction Integrity Program, which determined that serious doubts clouded Jones's conviction, the prosecution moved to dismiss the indictment against Jones.

70.     On November 3, 2016, Supreme Court, New York County, dismissed the indictment against Jones.

71.     Since Jones left prison in 2010, he has started rebuilding his life. He now cares for his 86-year-old mother, who supported him throughout his incarceration and never gave up faith that he would be exonerated. Despite missing decades of her company and companionship, Jones can now begin reciprocating the years of sacrifice she made for him.

72.     Jones has always sought to better himself through education and has encouraged others to do the same. In 2014, he earned his associate's degree in criminal justice from Bronx Community College. In December 2017, he earned his bachelor's degree from John Jay College of Criminal Justice. He plans to continue his studies of criminal justice in graduate school.

## **DAMAGES**

73.     Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions caused Jones to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted, and forced to serve nearly thirty years imprisoned. Jones was falsely

labeled a sex offender and was denied prison privileges such as trailer visits with family, work assignments, and educational opportunities.

74.     While incarcerated, Jones suffered severe physical and psychological injuries. For example, another inmate struck Jones's shoulder with a pipe, barely missing his head. Jones still bears a lump from that attack that aches in the changing weather. A group of correction officers assaulted Jones at Greenhaven. And, as a convicted sex offender, Jones suffered from continual harassment from inmates and correction officers alike who wrongly believed that Jones was a rapist.

75.     During his nearly three-decade long incarceration, many members of Jones's close-knit family passed away, including his brother, grandmother, uncle, aunt, great-aunts, and a sister-in-law. Jones was unable to console his family or join them in mourning because he was incarcerated. He suffered the humiliation of attending his youngest brother's funeral in handcuffs and shackles.

76.     Jones's wrongful incarceration prevented him from starting his own family. Because he was in custody, he could not marry or have children.

77.     As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Jones sustained injuries and damages, which continue to date and will continue into the future, including: loss of freedom for more than 29 years; physical pain and suffering; severe mental anguish; emotional distress; loss of family relationships; severe psychological damage; loss of property; legal expenses; loss of income and career opportunities; humiliation, indignities and embarrassment; degradation; damage to reputation; loss of quality and enjoyment of life; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet,

sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled to monetary relief.

78.     Upon his release on parole, Jones was required to register annually as a sex offender. His name, photograph, address, and personal information were published in a public directory. His terms of supervision prevented him from leaving the State of New York. Jones's parole and sex offender status continued to restrict his freedom for six additional years. As a result of his parole and his sex offender status, he suffered severe mental anguish; emotional distress; loss of family relationships; severe psychological damage; loss of property; legal expenses; loss of income and career opportunities; humiliation, indignities and embarrassment; degradation; damage to reputation; loss of quality and enjoyment of life; and restrictions on his personal freedom including but not limited to educational opportunity, vocational opportunity, personal fulfillment, travel, enjoyment, and expression, for which he is entitled to monetary relief.

79.     As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Jones was also deprived of his familial relationships.

80.     As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Jones sustained physical injuries and damages, including physical pain and suffering, personal injuries, physical illness, inadequate medical care, for which he is entitled to monetary relief.

81.     Jones continues to suffer physical, emotional, mental, and psychological damage as a result of the Defendants' conduct.

82.     These injuries and damages to Jones were foreseeable to Defendants at the time of their acts and omissions.

83.     All of the acts and omissions committed by Defendants were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

## FEDERAL CLAIMS

### COUNT I
**Malicious Prosecution under 42 U.S.C. § 1983 and the 4th and 14th Amendments**
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

84.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

85.      Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua, with malice and knowing that probable cause did not exist to arrest Clifford Jones and prosecute him for the murder of Ramon Hernaiz and rape and attempted robbery of Leona Robinson, acting individually and in concert caused Jones to be arrested, charged, and prosecuted for that crime, thereby violating his clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free of unreasonable searches and seizures.

86.      Specifically, these Defendants, acting individually and in concert, fabricated evidence and intentionally withheld from and misrepresented to prosecutors and the grand jury exculpatory facts that vitiated probable cause against Jones and would have impeached witnesses for the prosecution at trial, including but not limited to the fact that the identification of Jones as the culprit was the result of impermissible suggestion or coercion, and that the police had fabricated inculpatory evidence and withheld exculpatory and impeachment evidence. These

17

Defendants also failed to conduct a constitutionally adequate investigation in light of decisive physical evidence indicating that Jones could not have been the culprit.

87.     These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Jones's clearly established constitutional rights. No reasonable officer in 1980–1981 would have believed this conduct was lawful.

88.     Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

89.     As a direct and proximate result of Defendants' actions, Clifford Jones was wrongly convicted and imprisoned for nearly 29 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT II
**Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, and Deliberately Failing to Conduct a**
**Constitutionally Adequate Investigation under 42 U.S.C. § 1983 and the 5th and 14th Amendments**
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

90.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

91.     Holland, Pridgeon, McCrossan, Kenny, and Resua, acting individually and in concert, deprived Clifford Jones of his clearly established constitutional right, under the Fifth and Fourteenth Amendments of the United States Constitution, to a fair trial.

18

92.     These Defendants deprived Jones of his right to a fair trial by fabricating inculpatory evidence and intentionally using unduly suggestive identification procedures, direct suggestion, or coercion to obtain a witness identification, including fabricating the false identifications of Jones by Leona Robinson.

93.     These Defendants deprived Jones of his right to a fair trial by withholding material exculpatory and impeachment evidence from prosecutors and defense, including without limitation: the exculpatory results of a macroscopic and microscopic comparison between Jones's hair and hair found in the true perpetrator's hat at the crime scene; the very fact that such a comparison had been made; and the circumstances of the witness interviews with Leona Robinson and others, which would have shown that the identification of Jones was fabricated or the result of suggestion or coercion.

94.     These Defendants deprived Jones of his right to a fair trial by deliberately failing to conduct a constitutionally adequate investigation.

95.     These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Jones's clearly established constitutional rights. No reasonable officer in 1980–1981 would have believed this conduct was lawful.

96.      Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

97.     As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex

offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT III**
**42 U.S.C. § 1983 Failure to Intercede**
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

98.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

99.     By their conduct and under color of state law, Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua had opportunities to intercede on behalf of Clifford Jones to prevent his false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law, but, due to their intentional conduct, recklessness, or deliberate indifference, declined or refused to do so.

100.     These Defendants' failures to intercede violated Jones's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth, Fifth, and Fourteenth Amendments. No reasonable police officer in 1980–1981 would have believed that failing to intercede to prevent these defendants from fabricating inculpatory evidence, intentionally using unduly suggestive identification procedures, direct suggestion, or coercion to obtain witness identifications, withholding material, exculpatory, or impeachment evidence, deliberately failing to conduct a constitutionally adequate investigation, and causing Jones to be arrested and prosecuted without probable cause, were lawful.

101.     Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

102.    As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

<strong><u>COUNT IV</u></strong><br>
<strong>42 U.S.C. § 1983 Civil Rights Conspiracy</strong><br>
<em>Against Holland, Pridgeon, McCrossan, Kenny, and Resua</em>

103.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

104.    Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua, acting within the scope of their employment and under color of state law agreed among themselves and with other individuals to act in concert in order to deprive Clifford Jones of his clearly established Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

105.     In furtherance of the conspiracy Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

a.    Falsely arresting and imprisoning Jones, knowing that they lacked probable cause;

b.    With witness Leona Robinson, fabricating a false identification of Jones knowing that the false identification would lead to Jones's trial and conviction;

c.    Fabricating inculpatory evidence in reports and pretrial communications with the prosecution, including the purported independent identifications of Jones;

d.    Committing perjury during hearings and trials; and

e.    Intentionally or with deliberate indifference failing to comply with their duty to

21

disclose *Brady* material during the pendency of the case.

106.    Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

107.    As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT V
### 42 U.S.C. § 1983 Supervisory Liability
*Against Kenny*

108.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

109.    The individual defendant police officers and detectives Defendants Holland, Pridgeon, McCrossan, and Resua, acted with impunity in an environment in which they were not adequately trained, supervised, or disciplined by Defendant Kenny and other supervisors, in this case and as a matter of practice.

110.    Defendant Kenny and other supervisors acted with gross negligence, recklessness, or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the defendant police officers, and thereby caused the individual defendant police officers to deprive Clifford Jones of his clearly established constitutional rights, including his rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

111.    Had Defendant Kenny and other supervisors not provided grossly inadequate

22

training, supervision, and discipline of the defendant officers, these defendants would not have used unduly suggestive identification procedures, direct suggestion or coercion to obtain witness identifications of Jones, fabricated inculpatory evidence, committed perjury, withheld exculpatory and impeachment evidence, and intentionally and maliciously caused Jones to be arrested and prosecuted without probable cause. Defendant Kenny and other supervisors were directly involved in the investigation of Jones and directly supervised the specific investigative acts taken by the individual officer defendants in this case.

112.    The grossly negligent, reckless, or deliberately indifferent conduct of Defendant Kenny and other supervisors under color of state law violated their clearly established duty, in 1996, to supervise defendants Defendants Holland, Pridgeon, McCrossan, and Resua, and no reasonable police supervisor in 1980–1981 would have believed that grossly negligent, reckless, or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinate officers was lawful.

113.    Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

114.    As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

### COUNT VI
**42 U.S.C. § 1983 *Monell* Claim**
***Monell* Unconstitutional Policy, Custom, or Pattern and Practice of Promoting, Facilitating, or Condoning Improper, Illegal, and Unconstitutional Investigative Techniques and Failure to Supervise, Discipline and Train**
*Against the City of New York*

115.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

116.    Prior to and at the time of the unlawful investigation, prosecution, and conviction of Clifford Jones, the NYPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, including but not limited to the following: (a) the reliance on witness statements that law enforcement knew or should have known were false; (b) the use of suggestive techniques, direct suggestion, or coercive techniques in interviews and interrogations to obtain false statements; (c) the fabrication of inculpatory evidence; (d) the suppression of exculpatory and impeachment evidence; (e) the intentional failure to conduct adequate investigations of crimes; and (f) engaging in the affirmative concealment and cover up of this type of misconduct.

117.    Prior to and at the time of the unlawful investigation, prosecution, and conviction of Jones, the NYPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to adequately supervise, discipline and train NYPD detectives and officers in connection with fundamental investigative tasks implicating the constitutional rights of witnesses and suspects, including but not limited to using police informants, conducting custodial interrogations and witness interviews, documenting and disclosing exculpatory and impeachment evidence to prosecutors, and the affirmative ongoing obligation to come forward with exonerating evidence.

118.     The NYPD's policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, and its policy, custom, or pattern and practice of failing adequately supervise, discipline and train NYPD detectives and officers was reflected by the multiple acts of misconduct and illegality committed by multiple NYPD detectives and supervisors in relation to multiple witnesses in the Jones investigation, as described above.

119.     Such unconstitutional municipal customs, practices, or policies were the moving force behind the false evidence used against Jones and the suppression of exculpatory physical evidence. As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

**STATE LAW CLAIMS**
**COUNT VII**
**Malicious Prosecution**
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

120.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

121.     Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua, despite knowing that probable cause did not exist to arrest and prosecute Clifford Jones for the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson, intentionally, recklessly, and with malice caused Jones to be arrested, prosecuted, and convicted for those crimes. Furthermore, these Defendants intentionally withheld from and misrepresented to prosecutors and the grand jury facts that further vitiated probable cause against Jones, including but not limited to the facts that the purported independent identifications of Jones were the product of unduly suggestive identification procedures, direct suggestion, or coercion and that the police

25

had fabricated inculpatory evidence and withheld exculpatory and impeachment evidence, including exculpatory physical evidence from a macroscopic and microscopic hair comparison.

122.    Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

123.    As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT VIII**
**Intentional, Reckless, or Negligent Infliction of Emotional Distress**
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

124.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

125.    The improper, deliberate, and traumatizing conduct of Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua, in deliberately causing, or recklessly disregarding the risk of causing, the wrongful prosecution, conviction, incarceration, and concomitant severe emotional distress, was extreme and outrageous, and directly and proximately caused the grievous injuries and damages set forth above.

126.    In the alternative, Defendants Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua, negligently and grossly negligently, and in breach of their duties owed to Clifford Jones to refrain from relying on statements from witnesses that these Defendants knew or should have known were false; refrain from fabricating evidence; refrain from using suggestive techniques, direct suggestion, or coercive techniques in interviews and interrogations to obtain

26

false witness statements; disclose material exculpatory and impeachment evidence; and otherwise act to deny Jones due process of law, directly and proximately caused Jones to be falsely arrested, maliciously prosecuted, and wrongly imprisoned for nearly 30 years and kept under parole supervision as a sex offender for 6 years. Defendants' actions unreasonably endangered Jones's physical health and safety, and caused him to suffer physical harm, including physical ailments resulting from the circumstances and duration of his wrongful incarceration.

127.    These Defendants engaged in these acts within the scope of their employment.

128.    These claims are tolled as these defendants concealed from Clifford Jones—and still are concealing to this day—their conduct giving rise to this cause of action.

## COUNT IX
### State Law Negligence
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

129.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

130.    Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua are liable for negligence, having breached their duty of reasonable care to Clifford Jones. Specifically and by way of example, these Defendants:

f.    failed to accurately report how Clifford Jones became a suspect in the crime;

g.    failed to accurately report the circumstances of Leona Robinson's false identifications of Jones as the person who murdered Ramon Hernaiz and raped and attempted to rob Robinson;

h.    buried and misrepresented evidence from a macroscopic and microscopic hair comparison that proved Jones's innocence;

i.    suppressed other exculpatory and impeachment evidence, including evidence

concerning the identification procedures leading to Robinson's false identification of Jones; and

      j.     failed to properly investigate leads in the investigation suggesting that Jones was not involved.

131.    Defendants' negligence and gross negligence directly and proximately caused Clifford Jones to be wrongfully prosecuted and imprisoned for nearly 30 years and kept under parole supervision as a sex offender for 6 years or extended the length of time he was wrongfully imprisoned.

132.    These Defendants engaged in these acts within the scope of their employment.

133.    Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

134.    As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

135.    Jones's cause of action for negligence was unavailable to him until the prosecution finally terminated in his favor on November 3, 2016, when the indictment was dismissed. These claims are tolled as Defendants concealed from Jones—and still are concealing to this day—their conduct giving rise to this cause of action.

**COUNT X**
***Respondeat Superior* Claim**
*Against the City of New York*

136.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and

further alleges as follows:

137.     At all times relevant to this Complaint, Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua acted as agents of the City of New York, in furtherance of the business, including law enforcement functions, of the City of New York, and within the scope of their employment or agency with the City of New York.

138.     The conduct by which the defendant officers committed the torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence was not undertaken for the Police Defendants' personal motives, but rather was undertaken while the Police Defendants were on duty, carrying out their routine investigative functions as detectives and police officers.

139.     Under the doctrine of respondeat superior, the City of New York is liable for their agents' state law torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence.

## COUNT XI
### New York State Constitution
*Against Holland, Pridgeon, McCrossan, Kenny, and Resua*

140.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further allege as follows:

141.     The conduct of Defendants Holland, Pridgeon, McCrossan, Kenny, and Resua, described above, also violated Clifford Jones's rights under the New York State Constitution, Article I, §§ 6 and 12, to due process of law and to be free from unreasonable searches and seizures.

142.    Clifford Jones is completely innocent of the murder of Ramon Hernaiz and the rape and attempted robbery of Leona Robinson. The prosecution finally terminated in Jones's favor on November 3, 2016, when the indictment was dismissed.

143.    As a direct and proximate result of Defendants' actions, Jones was wrongly convicted and imprisoned for nearly 30 years, wrongly placed under parole supervision as a sex offender for 6 years, and suffered the other grievous and continuing damages and injuries set forth above.

144.    Defendant City of New York is liable under respondeat superior for the actions of its employees within the scope of their employment.

**WHEREFORE**, Plaintiff Clifford Jones prays as follows:

A.  That the Court award compensatory damages to Plaintiff and against all Defendants, jointly and severally, in an amount to be determined at trial;

B.  That the Court award punitive damages to Plaintiff, and against all individual Defendants in their individual capacity, in an amount to be determined at trial, that will deter such conduct by Defendants in the future;

C.  For a trial by jury;

D.  For pre-judgment and post-judgment interest and recovery of Plaintiff's costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. §1983 claims; and

E.  For any and all other relief to which Plaintiff may be entitled.

Dated:      New York, New York
            January 30 , 2018

                                    Respectfully submitted,

                                    _____
                                    Peter Neufeld
                                    Emma Freudenberger
                                    Rick Sawyer
                                    NEUFELD SCHECK & BRUSTIN, LLP
                                    99 Hudson Street, 8th Floor
                                    New York, New York 10013
                                    (212) 965-9081